<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ZIA HASSAN SHAIKH,<br><br>             Plaintiff,<br><br>      v.<br><br>STATE OF NEW JERSEY - DEPARTMENT OF BANKING & INSURANCE, DIVISION OF INSURANCE, et al.,<br><br>             Defendants. | Civil Action No. 19-14092 (GC) (TJB)<br><br>**<u>MEMORANDUM OPINION</u>** |

<u>**CASTNER, District Judge**</u>

        **THIS MATTER** comes before the Court upon two Motions to Dismiss Plaintiff Zia Hassan Shaikh's Amended Complaint under Federal Rules of Civil Procedure (Rules) 12(b)(1) and 12(b)(6) (ECF Nos. 39 & 43) and Plaintiff's Motion for Sanctions under Rule 11 (ECF No. 45). Plaintiff opposed, and Defendants replied. (ECF Nos. 40-42, 46-47.) The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' Motions to Dismiss are **GRANTED IN PART**. Plaintiff's Motion for Sanctions is **DENIED**.

I.      <u>**BACKGROUND**</u>

        A.      **Factual Background**[1]

        This matter arises out of the revocation by the New Jersey, Department of Banking &

---

[1]        On a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Insurance, Division of Insurance (the Department) of Plaintiff Shaikh's New Jersey licenses to produce insurance and to sell real estate. (ECF No. 27 at 5.[2]) Since 1995, Shaikh held nine licenses under the Department to produce insurance and one real estate salesperson license under the New Jersey Real Estate Commission (REC).[3] (*Id.* at 5-6.) In August 2011, Shaikh hired a marketing company to send 3,550 postcard mailers advertising his insurance business to New Jersey residents. (*Id.* at 9.) In or around July 2012, Shaikh received a letter from the Department notifying Shaikh that his mailers contained fraudulent information and violated several New Jersey statutes. (*Id.*) Instead of paying a $2,500 fine, Shaikh contested the complaint and hired Defendants Brian Thorn, Esq., and the White, Fleischner & Fino Law Firm (the Attorney Defendants) to represent him in the matter. (*Id.* at 10.) In February 2013, Thorn advised Shaikh that the matter had concluded in Shaikh's favor and was resolved. (*Id.*) Thorn further advised Shaikh that there was no need to continuously follow up on the case status because "the longer [the case] sits . . . eventually it will just get buried and then forgotten." (*Id.* at 38.) Although uncomfortable, Shaikh eventually stopped following up with Thorn on the status of the Department's complaint against him. (*Id.*)

In September 2014, Shaikh moved his insurance business to Buffalo, Wyoming, "in an effort to acquire new clients in a different market." (*Id.* at 11.) Shaikh registered a new Wyoming address with the Department and appointed a registered agent "who was to receive [Shaikh's] mail and any correspondence" at the Wyoming address. (*Id.*) In March 2016, Shaikh received an unexpected phone call from Defendant Deputy Attorney General Ryan Schaffer "seeking resolution of the outstanding 2012 matter" regarding the fraudulent mailers. (*Id.* at 13.) Shaikh

---

[2]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]     The REC is a state commission organized within the Department of Insurance. *See* N.J. Stat. Ann. § 45:15-5.

2

informed DAG Schaffer that he was under the impression that the matter had been resolved, and instructed DAG Schaffer to direct all communications relating to the fraudulent mailers to the Attorney Defendants.  (*Id.*)

On March 30, 2016, the Department issued an Order to Show Cause to Shaikh as to why his insurance producer license should not be revoked due to the allegedly-fraudulent mailers.  (*Id.* at 11; *see also* ECF No. 43-3 at 2-6 (Mar. 30, 2016 Order to Show Cause).) [4]  The Department did not contact the Attorney Defendants, but mailed the Order to Show Cause to Shaikh's registered address in Wyoming.  (ECF No. 27 at 11.)  The Order required Shaikh to respond within twenty days.  (*Id.*)  Shaikh's registered agent at the Wyoming address scanned the documents sent by the Department and emailed the documents to Shaikh.  (*Id.*)  Shaikh, however, "did not notice the email" because he was "in the middle of preparing for his divorce trial" as a pro se litigant.  (*Id.*)  Shaikh also alleges that he failed to respond to the Order on time because the agent who received the mail in Wyoming did not inform Shaikh of the order within twenty days.  (*Id.* at 14.)  According to Shaikh, the Department "chose to act carelessly, even maliciously," by mailing the notices to Shaikh's Wyoming address — which, as Shaikh also notes, was the address he had registered with the Department.  (*Id.* at 11.)

---

[4]     Generally, this Court may only consider the pleadings when deciding a motion to dismiss. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).  But this Court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Id.*  Documents attached to the motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim." *Id.*  Here, Shaikh relies on a litany of correspondence, written notices, and administrative decisions in his Amended Complaint that are not attached to the pleading, such as the March 30, 2016 Order to Show Cause (ECF No. 43-3 at 2).  The State Defendants have attached most of these documents to their Motion to Dismiss (ECF Nos. 43-3 & 43-4), together with a certificate attesting to their authenticity (ECF No. 43-2.)  While Shaikh disagrees with many of the Department's conclusions in these documents, he does not contest the authenticity of the documents themselves.  The Court will therefore consider the documents provided by the State Defendants that are referenced in and integral to the Amended Complaint.

On June 21, 2016, the Department issued a final order revoking Shaikh's insurance licenses and fining him $71,000 plus the costs of the investigation.  (*Id.*; ECF No. 43-3 at 10-16 (Final Order E16-56).)  Shaikh filed motions with the Department seeking a hearing and to dismiss the complaint against him, but the Department denied both motions.  (ECF No. 27 at 12.)  Shaikh also filed two appeals with the New Jersey Superior Court, Appellate Division, each of which he voluntarily withdrew in order to continue to litigate the license revocations at the Department level.  (*Id.*; ECF No. 43-3 at 62 (Nov. 10, 2016 Order Dismissing Appeal); ECF No. 43-4 at 59 (Nov. 21, 2017 Order Dismissing Appeal).)

In June 2017, while Shaikh was litigating the revocation of his insurance licenses, Shaikh applied to renew his real estate license with the REC and disclosed that his insurance licenses had been revoked.  (ECF No. 27 at 14.)  The REC held a hearing in November 2017 related to Shaikh's real estate license and affirmed its denial of Shaikh's application for a real estate license on January 11, 2018.  (*Id.*; ECF No. 43-4 at 63-73 (Order Affirming Denial of Application for a Real Estate Salesperson License).)  According to Shaikh, the REC's representative at the hearing relied primarily on a certification documenting Shaikh's outstanding child support arrears obtained from the Ocean County probation department as a basis to revoke his real estate license.[5]  (ECF No. 27 at 14-15.)  On October 13, 2018, the Department issued a final order declining to reconsider its revocation of Shaikh's insurance licenses.  (*See* ECF No. 43-4 at 75-107.)  Shaikh brings the current action against the Department, the REC, and the following individuals in both their official and individual capacities: Marlene Caride, former Department Commissioner; Aurelio Romero,

---

[5]     Over the past ten years, Shaikh "has filed or joined at least nineteen (19) federal actions and eight (8) state actions seeking to challenge events and underlying court orders flowing from his divorce."  *Shaikh v. Germadnig*, Civ. No. 22-2053, 2023 WL 4534127, at *1 (D.N.J. July 13, 2023) (noting that "the common theme uniting each lawsuit is Plaintiff's anger with the outcome of his state court proceedings" and summarizing Shaikh's prior state and federal lawsuits).

the current Executive Director of the REC; Lauren Glantzberg, a "supervisor of investigations" at the REC; and DAG Schaffer (the State Defendants).  (ECF No. 27 at 4-5.)  Shaikh also alleges that the loss of his licenses was a result of the Attorney Defendants' inadequate representation and advice in 2012 and 2013, as well as their failure to correct the situation in 2016 after Shaikh informed them that the matter was not resolved.  (*Id.* at 16.)  Shaikh accuses all Defendants of conspiring to deprive him of his constitutional rights, (*id.* at 31-32); and of discriminating against him because he is Muslim, (*id.* at 21).

###### B.     Procedural History

Shaikh filed his original Complaint on June 20, 2019.  (ECF No. 1.)   After Shaikh's applications to proceed *in forma pauperis* were twice denied due to missing information (ECF Nos. 11 & 22), Shaikh filed an Amended Complaint on May 21, 2023 and paid the filing fee, (ECF No. 27).

Shaikh asserts fourteen separate causes of action that are not clearly labeled, and several of which appear duplicative.  Shaikh asserts, via 18 U.S.C. § 1983, violations of his rights to due process, a  fair hearing, and equal protection under the Fourteenth Amendment to the United States Constitution, and his right to freedom of speech and right to petition under the First Amendment; a violation of his "constitutional right to a remedy," which is based on the same alleged constitutional violations; two causes of action under 18 U.S.C. §§ 241 and 242 (federal criminal statutes proscribing deprivation of rights under color of law and conspiracy against the free exercise of constitutional rights); a violation of 18 U.S.C. § 1981 for racial discrimination; and two state-law claims for tortious interference with business relationships and prospective economic advantage.  (*Id.* at 19, 36-37, 46-50.)  Shaikh also (1) argues that the REC should not have considered his alleged outstanding child support arrears when revoking his license (*id.* at 44-45);

(2) asserts three causes of action against the Department and REC under New Jersey statutes governing the revocation process (*id.* at 51-54); and (3) seeks declaratory relief (*id.* at 55-56).[6] Shaikh seeks the "right to obtain or renew his multiple insurance and REC licenses," along with $5 million in actual and compensatory damages, and punitive damages.  (*Id.* at 47-54, 56.)

The Attorney Defendants and State Defendants have filed separate Motions to Dismiss now pending before the Court.  (ECF Nos. 39 & 43.)  Shaikh opposed each motion (ECF Nos. 40 & 45) and simultaneously moved the Court to enter Rule 11 sanctions against DAG Jeffrey S. Posta, who represents the State Defendants in this matter (ECF No. 45).  Defendants replied.  (ECF Nos. 41, 46-47.)  Shaikh filed one sur-reply without leave of Court, which the Court will consider in light of Shaikh's pro se status.[7]  (ECF No. 42.)

## II.    STANDARD OF REVIEW

### A.    Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction

Rule 12(b)(1) permits a defendant to move at any time to dismiss the complaint for lack of subject-matter jurisdiction on either facial or factual grounds.  *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction."  *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999).  In analyzing a facial challenge, a court "must only consider the allegations of the complaint and documents attached thereto, in the light most favorable to the plaintiff."  *Gould*

---

[6]    The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims under § 1367(a).

[7]    *See, e.g.*, *Richardson v. Cascade Skating Rink*, Civ. No. 19-8935, 2022 WL 2314836, at *2 n.1 (D.N.J. Jun. 28, 2022) (considering a sur-reply filed by a *pro-se* plaintiff without prior leave of court due to the greater leeway typically afforded to *pro-se* litigants (citing *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011))).

*Electronics Inc.*, 220 F.3d at 176.  "A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists." *Arosa Solar Energy Sys., Inc. v. Solar*, Civ. No. 18-1340, 2021 WL 1196405, at *2 (D.N.J. Mar. 30, 2021).

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016).  The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268.  Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, Civ. No. 09-1743, 2010 WL 3908567, at *2 (D.N.J. Sep. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

Rule 12(b)(1) also encompasses dismissals for "lack of jurisdiction due to Eleventh Amendment immunity." *Nemeth v. Office of the Clerk of the N.J. Superior Court*, Civ. No. 19-16809, 2020 WL 2537754, at *2 (D.N.J. May 19, 2020).  State sovereign immunity under the Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Wright v. New Jersey/Dep't of Educ.*, 115 F. Supp. 3d 490, 494 (D.N.J. 2015).  Once a challenge to jurisdiction is raised under Rule 12(b)(1), the plaintiff bears the burden to demonstrate the existence of subject-matter jurisdiction.  *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).

**B.      Rule 12(b)(6) – Failure to State a Claim Upon Which Relief Can Be Granted**

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements."  *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim."  *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020).

**C.      Rule 8 – Pleading Requirements**

Rule 8 sets forth general rules of pleading and requires (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) allegations that are "simple, concise, and direct."  Fed. R. Civ. P. 8(a)(1), (a)(2), (d).  The allegations in the complaint must not be "so undeveloped that [they do] not provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).  Courts must liberally construe pro se pleadings "to protect pro se litigants from inadvertent forfeiture of important rights because of

8

their lack of legal training." *Higgs*, 655 F.3d at 339 (quoting *Triestman v. Fed. Bureau of Prisons*, 470 U.S. 471, 475 (2d Cir. 2006)).  But even pro se litigants must "comply with the basic pleading requirements of Rule 8(a)." *Purisma v. City of Phila.*, 738 F. App'x 106, 107 (3d Cir. 2018).

## III.   <u>DISCUSSION</u>

Defendants contend that Shaikh's Amended Complaint fails to satisfy Rule 8 due to its length and failure to delineate which claims are being asserted against which Defendants.  (ECF No. 39-7 at 32-33; ECF No. 43-1 at 37.)  The Court agrees.

Shaikh does not direct any of his claims against any particular Defendant.  Instead, Shaikh "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Nash v. New Jersey*, Civ. No. 22-1804, 2022 WL 4111169, at *2 (D.N.J. Sep. 8, 2022).  For example, in the latter portion of the pleading, Shaikh asserts six counts under specific laws.  (ECF No. 27 at 46-54.)  But in the prior forty-five pages, Shaikh alleges additional causes of action under multiple legal theories that differ from the six counts.  (*See, e.g.*, ECF No. 27 at 28 ("[T]he defendants have violated all the Procedural Due Process, Substantive Due Process and the Individual rights listed in the Bill of Rights including the Fifth and Fourteenth Amendment[s].").)  Shaikh lists the respective titles of Defendants Caride, Romero, and Glantzberg at the beginning of the Amended Complaint, but does not allege any specific actions on their part throughout the remainder of the pleading other than Romero's allege failure to respond to Shaikh's most recent demand letters.  (*Id.* at 4, 8.)  This type of "shutgun pleading" violates Rule 8 even despite the leeway afforded to pro se plaintiffs and is a sufficient basis to dismiss Shaikh's pleading in its

entirety.  *See Nash*, 2022 WL 4111169, at *1-2.[8]  Nevertheless, the Court will address the other

bases raised by Defendants that warrant dismissal of the Amended Complaint.  *See Germadnig*,

2023 WL 4534127, at *12.

### A.    Claims under 18 U.S.C. §§ 241 and 242

First, Shaikh's attempt to assert relief under 18 U.S.C. §§ 241 and 242 against all

Defendants "is misplaced as those penal statutes do not supply a private cause of action."  *Woodall*

*v. Geist*, Civ. No. 09-4975, 2010 WL 1838433, at *2 n.1 (D.N.J. May 5, 2010) (construing claims

asserted under these statutes as § 1983 claims); *Gass v. N.J. Div. of Youth & Fam. Servs.*, Civ. No.

09-928, 2009 WL 2878456, at *1 n.2 (D.N.J. Sep. 2, 2009) (same).  Further, Shaikh bases these

claims on the same facts as his § 1983 claims, so the Court need not construe them separately from

Shaikh's § 1983 claims discussed herein.  (*See* ECF No. 27 at 29-33.)  Because further amendment

would be futile, Shaikh's claims under 18 U.S.C. §§ 241 and 242 are dismissed with prejudice as

to all Defendants.  *See Jeffreys v. New Jersey*, Civ. No. 07-3940, 2008 WL 619155, at *3 (D.N.J.

Mar. 3, 2008) ("There is simply no private right of action under these federal criminal statutes,

proscribing deprivation of rights under color of law and conspiracy to commit offense or to defraud

the United States." (collecting cases)).

### B.    Timeliness of Claims Against Attorney Defendants

The Attorney Defendants first argue that all of Shaikh's claims against them are barred by

the applicable statutes of limitations.  (ECF No. 39-7 at 27.)  "Defendants may raise a statute of

limitations defense in a 12(b)(6) motion to dismiss if 'the time alleged in the statement of a claim

shows that the cause of action has not been brought within the statute of limitations.'"  *Perelman*

---

[8]      Additionally, this Court has repeatedly instructed Shaikh on Rule 8's pleading
requirements and admonished him for ignoring them.  *See Germadnig*, 2023 WL 4534127, at *12.

*v. Perelman*, 545 F. App'x 142, 149 (3d Cir. 2013) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir.2002)).  "The time bar must be evident on the face of the complaint for the complaint to create a basis for dismissal." *Id.*

The Attorney Defendants assert that the applicable statutes of limitations began to run in February 2013, when the attorney-client relationship with Shaikh ended.  (ECF No. 39-7 at 31.)  They argue that the latest Shaikh's claims could have accrued was in 2016, when the Department issued its Order to Show Cause and the Attorney Defendants declined to take any further action on Shaikh's behalf.  (*Id.* at 29-31.)  While Shaikh filed the instant case on June 20, 2019, he did not add the Attorney Defendants as parties to this case until he filed an Amended Complaint on May 21, 2023.  (*See generally* ECF Nos. 1 & 27.)  The Attorney Defendants argue that all of Shaikh's claims against the Attorney Defendants are time-barred even if they did not accrue until 2016.  (*See* ECF No. 39-7 at 29-31.)  The Court will address the timeliness of each of Shaikh's claims in turn.

First, a two-year statute of limitations applies to Shaikh's § 1983 claims related to alleged violations of due process, equal protection, and the First Amendment.[9]  And "[i]t is axiomatic that under federal law, which governs the accrual of section 1983 claims, 'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'"  *Montgomery*, 159 F.3d at 126 (quoting *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)).  The record shows that the Department's final order denying Shaikh's efforts to hold a hearing and reinstate his insurance licenses was issued on

---

[9]     *See Montgomery v. De Simone*, 159 F.3d 120, 126 n.4 (3d Cir. 1998) (noting that New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. 2A:14-2, applies to civil rights claims under § 1983); *Southward v. Elizabeth Board of Educ.*, Civ. No. 15-3699, 2017 WL 4392038, at *6 (D.N.J. Oct. 2, 2017) (noting that a two-year statute of limitations applies to First Amendment claims asserted under § 1983).

October 13, 2018.  (ECF No. 43-4 at 107.)  Therefore, the latest that Shaikh could have plausibly known that the Attorney Defendants' actions harmed Shaikh's constitutional rights related to the Department's proceedings against him was October 13, 2018, when the Department denied his requests for relief with prejudice.  (*See id.*)  Thus, Shaikh had until October 13, 2020 to file his due process and First Amendment § 1983 claims against the Attorney Defendants.

Similarly, the latest that Shaikh could plausibly allege that the Attorney Defendants discriminated against him on the basis of race and interfered with his prospective business relationships is approximately June 2016, when Shaikh discovered that the Department's complaint against him had not in fact been resolved, and the Attorney Defendants declined to represent him further.  (ECF No. 27 at 43.)  Therefore, Shaikh had until June 2018 to bring a § 1983 claim alleging an equal protection violation against the Attorney Defendants.  And because the statute of limitations for § 1981 claims is four years, Shaikh had until June 2020 to file his § 1981 claim against the Attorney Defendants.[10]  Finally, because the statute of limitations for claims of tortious interference under New Jersey law is six years, Shaikh had until approximately June 2022 to file his claims for tortious interference against the Attorney Defendants.[11]

Shaikh did not bring any claims against the Attorney Defendants until May 21, 2023, when

---

[10]     *Williams v. Verizon New Jersey, Inc.*, Civ. No. 19-9350, 2020 WL 1227663, at *7 (D.N.J. Mar. 12, 2020) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-383 (2004)).

[11]     *See In re Bernheim Litig.*, 290 B.R. 249, 258 (D.N.J. 2003) (citing N.J. Stat. Ann. § 2A:14-1).  Additionally, as the Attorney Defendants correctly note, requests for declaratory relief under the Declaratory Judgment Act are governed by the same limitations period applicable to the underlying substantive claims.  (ECF No. 39-7 at 29.)  *See Arezzo v. City of Hoboken*, 719 F. App'x 115, 119 (3d Cir. 2018) ("[W]hen plaintiffs' claims are barred by a statute of limitations applicable to a concurrent legal remedy, then a court will withhold declaratory judgment relief in an independent suit essentially predicated upon the same cause of action.  Otherwise, the statute of limitations can be circumvented merely by '[d]raping their claim in the raiment of the Declaratory Judgment Act.'" (citations omitted)).

12

Shaikh filed his Amended Complaint and added the Attorney Defendants as parties to this action. (*See generally* ECF No. 27.)  Thus, the applicable statutes of limitations bar all of Shaikh's claims against the Attorney Defendants unless they either relate back to Shaikh's original Complaint filed on June 20, 2019 under Rule 15(c), or the circumstances warrant equitable tolling.  Upon careful review, the Court finds neither exception applicable.

*First*, nothing in the record suggests that the Attorney Defendants "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity" in Shaikh's original Complaint.  *See* Rule 15(c)(1)(C)(ii).  Indeed, Shaikh referenced the Attorney Defendants in his original Complaint without naming them as defendants. (ECF No. 1 ¶ 16.)  "[I]t is well-settled that [Rule 15(c)] is not met if the plaintiff is aware of the identity of the newly named parties when she files her original complaint and simply 'chooses' not to name them at that time." *Allen v. Nat'l R.R. Passenger Corp.*, 2004 WL 2830629, at *9 (E.D. Pa. Dec. 7, 2004) (citing *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1183 (3d Cir. 1994)). Nothing in the record suggests that Shiakh did not name the Attorney Defendants as defendants in his original filing due to a mistake as opposed to a choice.  *See, e.g.*, *Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1014-15 (3d Cir. 1995) (finding that an amended complaint adding new defendants did not relate back to the original complaint where the plaintiffs did not show that they would have sued the new defendants within the statute of limitations but for a mistake concerning the defendants' identities).

*Second*, nothing in the record supports Shaikh's invocation of equitable tolling because there is currently no factual basis to infer that the Attorney Defendants actively misled Shaikh into breaching the statutes of limitations.  Equitable tolling is an "extraordinary" remedy that applies "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action;

(2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Robinson v. Dalton*, 107 F.3d 1018, 1022, 1024 (3d Cir. 1997).

Shaikh argues that the first exception of fraudulent concealment exception applies here. (ECF No. 40 at 17.)  "[F]raud, and thus fraudulent concealment, must be pleaded with particularity." *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984).  But Shaikh does not point to any well-pleaded facts in support of his equitable tolling argument.  Even if the Court were to infer fraudulent concealment from the Attorney Defendants' assurances to Shaikh in February 2013 that the matter had been resolved, Shaikh discovered in June 2016 that the matter had not been resolved. (ECF No. 27 at 6.)  The fraudulent concealment rule "only tolls the statute of limitations *until the date of discovery.*" *In re Processed Egg Products Antitrust Litig.*, 931 F. Supp. 2d 654, 662 (E.D. Pa. 2013) (collecting cases).  Thus, even if the Court were to infer fraudulent concealment beginning in 2013, Shaikh could not plausibly allege such concealment beyond June 2016, which does not affect the untimeliness of Shiakh's claims against the Attorney Defendants.

For these reasons, the Court must dismiss all of Shaikh's claims against the Attorney Defendants as untimely.  Given Shaikh's pro se status, the Court dismisses his claims against the Attorney Defendants without prejudice, and will grant him thirty days within which he may move for leave to file a Second Amended Complaint to the extent he can pled facts justifying why equitable tolling or relation-back should apply here.  *See Taylor v. Comput. Sciences Corp.*, Civ. No. 20-1848, 2021 WL 3464790, at *5 (D.N.J. Aug. 6, 2021) ("[A]lthough [Plaintiff] has not alleged facts that would warrant any sort of equitable tolling of the limitations period, this Court cannot say that he is wholly incapable of doing so. Thus, dismissal without prejudice is appropriate." (quoting *Cunningham v. Albright College*, 2020 WL 7640192, at *6 n.8 (E.D. Pa. Dec. 23, 2020))).

C.   *Rooker-Feldman*

The State Defendants argue that the *Rooker-Feldman* doctrine bars Shaikh's claims in the Amended Complaint because they ask this Court to review a state court's final decisions.  (ECF No. 43-1 at 33.)  For the reasons set forth below, the Court disagrees.

Because a federal district court does not sit in review of state-court judgments, the *Rooker-Feldman* doctrine prohibits a litigant from attacking the results of state-court litigation in federal court.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  *Rooker-Feldman* has four prerequisites: "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

Here, while the State Defendants accurately argue that the Amended Complaint essentially seeks to relitigate the Department's orders revoking Shaikh's licenses, such orders are not the type of final state court judgments subject to the *Rooker-Feldman* doctrine.  "The Supreme Court has made clear . . . that the *Rooker-Feldman* doctrine only applies to state judicial proceedings, not administrative or legislative proceedings." *Nat'l R.R. Passenger Corp. v. Pa. Public Utility Com'n*, 342 F.3d 242, 257 (3d Cir. 2003) (citing *Verizon Md., Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 644 n.3 (2002) ("The [*Rooker–Feldman*] doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency.")).  The Department is a state administrative agency existing within the executive branch of the State Government.  N.J. Stat. Ann. § 17:1-1.  Thus, the *Rooker-Feldman* doctrine does not apply to the Department's final orders.  And even though Shaikh twice appealed the Department's decisions to

the Appellate Division, Shaikh voluntarily withdrew each of those appeals.  (*See* ECF No. 43-3 at

62 (Nov. 10, 2016 Order Dismissing Appeal); ECF No. 43-4 at 59 (Nov. 21, 2017 Order

Dismissing Appeal).)  Shaikh never "lost" in state court, and he is complaining of injuries caused

by agency decisions as opposed to state-court judgments.  Therefore, the *Rooker-Feldman* is not a

basis to dismiss this case.  *See Kaul v. Christie*, 372 F. Supp. 3d 206, 243 (D.N.J. 2019) (holding

that *Rooker-Feldman* did not apply where a plaintiff never appealed a state agency's revocation of

his medical license to the Appellate Division, and instead initiated a federal action).[12]

### D.    Sovereign Immunity

The Eleventh Amendment to the United States Constitution bars not only suits against

states themselves, "but also suits for damages against 'arms of the State' — entities that, by their

very nature, are so intertwined with the State that any suit against them renders the State the 'real,

substantial party in interest.'"  *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016)

(citation omitted).  The State Defendants argue that they are entitled to sovereign immunity under

the Eleventh Amendment.  (ECF No. 43-1 at 23-24.)

To determine whether a party is entitled to sovereign immunity under the Eleventh

Amendment, the Third Circuit employees the "arm of the state" test set forth in *Fitchik v. New

Jersey Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989).  Under the *Fitchik* test, a court

---

[12]     Although not raised by the parties, the abstention doctrine of *Younger v. Harris* — which
requires federal courts to abstain from interfering with certain pending state proceedings — is also
inapplicable here.  401 U.S. 37 (1971).  The Department's proceedings against Shaikh resulting in
the revocation of his licenses are arguably the type of "civil enforcement proceedings" to which
*Younger* abstention applies.  *See Kaul*, 372 F. Supp. 3d at 232.  But here, Shaikh asserts claims
and seeks monetary relief that he could not have obtained before the Department, and most of the
parties in this action were not parties to the Department proceedings (such as Defendants Romero,
Glantzberg, DAG Schaffer, and the Attorney Defendants).  Thus, not all of the factors warranting
*Younger* abstention have been met.  *See id.* at 232-235.  For these reasons, the *Younger* doctrine is
not a basis for the Court to abstain from adjudicating these claims.

must consider "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Caride v. Altman*, 623 F. Supp. 3d 441, 450 (D.N.J. 2022) (quoting *Karns v. Shanahan*, 879 F.3d 504, 513 (3d Cir. 2018) (internal citation omitted)).

Here, all three *Fitchik* factors weigh in favor of finding that the Department, REC, and individual State Defendants are "arms of the state" for the purpose of sovereign immunity.[13] Accordingly, the question becomes whether an exception to sovereign immunity applies here. "Eleventh Amendment immunity . . . is subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) . . . suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002); *see also Kongtcheu v. Constable*, Civ. No. 12-6872, 2016 WL 270075, at *5 (D.N.J. Jan. 20, 2016) (same).

Nothing in the current record suggests that either of the first two exceptions applies. It is

---

[13]     First, payment of a judgment against the Department and its officials acting in their official capacities would likely come from the state's treasury, given that the Department is organized within the executive branch of the state government and pays all fees, assessments, and charges that it collects to the state treasury. *See Altman*, 623 F. Supp. 3d at 451-52 (citing N.J. Stat. Ann. §§ 17:1-1, 17:1-8).   Second, the Department and its Commissioner "act at the behest of the Governor, and . . . must act in accordance with the power bestowed upon them by the Legislature." *Id.* at 452.   Thus, the second factor weighs heavily in favor of finding that the Department and its personnel are arms of the state.  *Id.*  Finally, because the State "wields substantial control over" the Department's functions and because the Commissioner serves at the pleasure of the Governor, the third factor of autonomy weighs in favor of finding that the Department and its personnel are arms of the state.  *Id.* at 452-54.  *See also* N.J. Stat. Ann. § 45:15-5 (establishing the New Jersey REC as a commission within the Department of Insurance); *Constantine v. N.J. Dep't of Banking and Ins.*, Civ. No. 22-2678, 2023 WL 2625007, at *6 (D.N.J. Mar. 24, 2023) (finding that both the Department and REC, as state agencies, are entitled to sovereign immunity from § 1983 claims); *Krupa v. N.J. State Health Benefits Comm'n*, Civ. No. 16-4637, 2018 WL 513208, at *6 n.10 (D.N.J. Jan. 23, 2018) (finding the former Commissioner of the Department entitled to sovereign immunity); *Jaye v. Att'y Gen. New Jersey*, 706 F. App'x 781, 783 (3d Cir. 2017) (applying sovereign immunity to a Deputy Attorney General).

"black-letter law that while Congress may abrogate a state's sovereign immunity under certain circumstances, it did not do so when enacting 42 U.S.C. § 1983." *Pappas v. Twp. of Galloway*, 565 F. Supp. 2d 581, 587 (D.N.J. 2008).  Nor is there any allegation or indication in the record that the State Defendants consented to suit.  *See Mierzwa v. U.S.*, 282 F. App'x 973, 976 (3d Cir. 2008) (noting that the State of New Jersey has not waived its sovereign immunity with respect to § 1983 claims in federal court); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-20 (1984) (holding that the Eleventh Amendment bars state law claims against state officials in federal court).

The third exception to Eleventh Amendment sovereign immunity, stemming from *Ex Parte Young*, 209 U.S. 123 (1908), allows plaintiffs to seek prospective declaratory or injunctive relief from individual state officers to end ongoing violations of federal law.  *Hess*, 297 F.3d at 323. While each of Shaikh's counts seeks damages, Shaikh also seeks injunctive relief by asking the Court to reinstate his licenses.  (ECF No. 27 at 55.)  "Broadly interpreted, this may be a request for an injunction to dissipate some kind of ongoing harm" — i.e., Shaikh's inability to sell real estate or produce insurance in New Jersey.  *See Kaul*, 372 F. Supp. 3d at 243 (noting that a request by a former doctor to reinstate his medical licenses could constitute a claim for prospective injunctive relief under a sovereign immunity analysis).  To the extent any injunctive claim survives the Eleventh Amendment analysis, however, it will be dismissed without prejudice for failure to state a claim.  *Id.*; *see infra* Section III.G.

### E.    "Persons" Under Section 1983

Shaikh brings several causes of action under § 1983, asserting violations of his rights to due process, a fair hearing, and equal protection under the Fourteenth Amendment, as well as his "right to petition" and freedom of speech under the First Amendment.  (ECF No. 27 at 20, 21, 35.) Shaikh also asserts a violation of his "constitutional right to a remedy" under the First and

Fourteenth Amendments, which is based on the same facts as the § 1983 claims.  Thus, the Court analyzes these claims together.[14]

To state a claim under § 1983, "a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States committed by a person acting under color of state law." *Mikhaeil v. Santos*, 646 F. App'x 158, 161-62 (3d Cir. 2016).

"A state and its departments are not considered 'persons' amenable to suit under section 1983." *Kaul*, 372 F. Supp. 3d at 244 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67-70, (1989)).  Thus, the Department and REC are not "persons" under § 1983, nor are the individual State Defendants to the extent they are sued in their official capacities for damages.  *See id.*  As discussed below, however, Shaikh may hold the individual State Defendants liable in their personal capacities if they violated clearly established statutory or constitutional rights of which a reasonable person would have known.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

Additionally, Section 1983 generally applies only to state actors.  *Mikhaeil*, 646 F. App'x at 161-62.  The Attorney Defendants are private actors.  (*See* ECF No. 27 at 10.)  Private individuals "may nonetheless be liable under § 1983 if they have conspired with or engaged in joint activity with state actors."  *Id.* at 162 (citing *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (finding that a § 1983 action against private parties accused of corruptly conspiring with a judge should not have been dismissed)).

Here, Shaikh repeatedly alleges that all Defendants "conspired to deprive" Shaikh of his

---

[14]     While Shaikh only asserts one "count" under § 1983, he cites the law multiple times throughout the Amended Complaint with respect to each of these constitutional rights.  Thus, the Court analyzes Shaikh's claims for constitutional violations under § 1983.  *See Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (noting that the Court must liberally construe a pro se plaintiff's pleadings and apply the appropriate law, regardless of whether the pro se litigant has correctly cited the law by name).

constitutional rights without providing any additional details about the alleged conspiracy.  (ECF No. 27 at 31, 33, 35, 37.)  Shaikh also suggests in conclusory fashion that Thorn advised Shaikh "[t]o let sleeping dogs lie" as part of a conspiracy with "the other Defendants."  (*Id.* at 32, 34, 38.)  But Shaikh makes no specific factual allegations demonstrating that the Attorney Defendants conspired with the State Defendants to deprive Shaikh of his constitutional rights.  In fact, Shaikh's allegations suggest just the opposite — that Thorn and the Law Firm were unaware of the State Defendants' 2016 Order to Show Cause because the State Defendants acted "carelessly, even maliciously" by "refusing to contact" Thorn.  (*Id.* at 11-12.)  Because § 1983 claims do not extend to private individuals or entities, and Shaikh has not alleged any facts plausibly implying that the Attorney Defendants conspired with state actors, Shaikh's claims under § 1983 related to his rights under the First and Fourteenth Amendments are dismissed without prejudice.  Shaikh will be given thirty days to move for leave to file a second amended complaint to the extent he can adequately allege a conspiracy between the Attorney and State Defendants.  *See Daisey v. New Jersey Div. of Child Protection and Permanency*, Civ. No. 15-8091, 2016 WL 3512068, at *4-5 (D.N.J. Jun. 27, 2016) (dismissing a plaintiff's § 1983 claims against the plaintiff's public defender where the plaintiff alleged that her public defender "conspired" with state actors "to deprive her of her constitutional rights," but provided "no facts whatsoever that gives rise to an inference that there was an agreement between her public defender and" state officials (citing *Watkins v. Weber*, 546 F. Supp. 2d 182, 187 (D.N.J. 2008))).

### F.    Quasi-Judicial Immunity

Next, the individual State Defendants argue that to the extent Shaikh asserts his claims against them in their personal capacities, they are protected by the doctrine of quasi-judicial immunity.  (ECF No. 43-1 at 29-31.)  The Court finds that Defendant Caride (the former

Commissioner of the Department) (ECF No. 27 at 4) enjoys quasi-judicial immunity.

"Quasi-judicial immunity applies to public officials whose roles are 'functionally comparable' to that of a judge." *Constantine*, 2023 WL 2625007, at *6 (quoting *Hamilton v. Leavy*, 322 F.3d 776, 785 (3d Cir. 2003)).  It has been applied to officials such as administrative law judges and agency officials tasked with performing adjudicative functions within the executive branch. *Savadjian v. Caride*, 827 Fed. App'x 199, 201-202 (3d Cir. 2020).  To determine whether quasi-judicial immunity applies to a particular official, courts evaluate "the official's job function, as opposed to the particular act of which the plaintiff complains." *Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006); *Keystone Redev. Partners, LLC v. Decker*, 631 F.3d 89, 101 (3d Cir. 2011) ("[D]eciding whether to extend quasi-judicial immunity to an official involves a 'legal determination' that focuses on 'the legal and structural components of the job function, as opposed to detailed facts about specific acts and mental states.'" (quoting *Dotzel*, 438 F.3d at 325)).  The Court must also analyze the non-exhaustive list of six factors set forth in *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985).  *Savadjian*, 2019 WL 6975102, at *3.

Here, after applying the *Cleavinger* factors, the Court concludes that Caride was performing a function comparable to that of a judge when she declined to reconsider and/or vacate the Department's revocation of Shaikh's licenses.  *See id.*

First, the very existence of this action filed against Caride in her individual capacity — less than a year after the Department issued its final order on October 13, 2018 — demonstrates the need to protect such officials from the risk of harassment by dissatisfied parties, which might skew their decisions out of fear of personal monetary liability.  *See id.*  Second, the record demonstrates several procedural safeguards that reduce the need for private lawsuits, including a thirty-three page opinion signed by Caride that recounts the entire record and addresses each of Shaikh's

arguments.  (ECF No. 43-4 at 75-107.)  Third, Caride's decision was not purely discretionary, but was constrained by outside law and precedent.  Her opinion details the legal and factual bases for affirming the Department's revocation of Shaikh's licenses.  (*Id.* at 95-107.)  Fourth, Caride's opinion demonstrates that both Shaikh and the Department had the opportunity to put forth their respective positions, reflecting the adversarial nature of the proceedings.   Fifth and most importantly, Shaikh had the right to appeal the adverse outcome to the Appellate Division of the New Jersey Superior Court.  *Savadjian*, 2019 WL 6975102, at *6 (quoting *Dotzel*, 438 F.3d at 327 (recognizing that "[a] formal appellate procedure is probably the single most court-like feature a government body can have")); N.J. Court R. 2:2-3(a) ("[A]ppeals may be taken to the Appellate Division . . . to review final decisions or actions of any state administrative agency or officer."). And while the final factor involving insulation of the official from political influence does not weigh in favor of immunity because the Commissioner serves "at the pleasure of the Governor," the Court finds that "the impact of any potential political pressure Commissioner Caride may encounter is assuaged by the above-delineated procedural safeguards and by the appeal process." *Savadjian*, 2019 WL 6975102, at *5; *Constantine*, 2023 WL 2625007, at *6 (applying quasi-judicial immunity to the Commissioner of the Department).   Finally, Shaikh's conclusory allegation that the Defendants "treat[ed] him differently than other [non-minority] licensees" is unsupported by any well-pled facts, and is therefore insufficient to show that Caride acted outside the scope of her authority.  *See Gross*, 487 F. App'x at 719 (finding a plaintiff's bare assertion that the defendant treated other similarly-situated non-minority customers differently than plaintiff did not satisfy Rule 8's pleading standard); *Kaul*, 372 F. Supp. 3d at 246 (finding "conclusory, fact-free" allegations of "bribery or fraud" insufficient to defeat an ALJ's claim of quasi-judicial immunity).

Accordingly, Shaikh's claims against Caride are barred by quasi-judicial immunity and are dismissed without prejudice.  Shaikh will have thirty days to move for leave to file a second amended complaint to the extent he can allege specific facts demonstrating that Caride "treat[ed] him differently than other [non-minority] licensees."  (ECF No. 27 at 17.)

### G.    Qualified Immunity

The individual State Defendants further argue that Shaikh's claims against them in their personal capacities should be dismissed because they all enjoy qualified immunity.  (ECF No. 43-at 31-33.)  The Court agrees.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson*, 555 U.S. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Moreover, "[q]ualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*  Qualified immunity aims to resolve "insubstantial claims" against government officials prior to discovery.  *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987).  It also protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted).

Qualified immunity attaches to state officials unless a plaintiff pleads facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Id.* at 735.  "At the motion-to-dismiss stage, courts evaluate qualified immunity for a constitutional claim by examining (i) whether the complaint contains plausible allegations of a constitutional violation and (ii) whether the asserted

23

constitutional right is clearly established." *Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021).

While Shaikh cites a variety of clearly-established constitutional rights in his Amended Complaint, Shaikh has not plausibly alleged that the individual State Defendants have violated his rights. Shaikh's factual allegations amount to disagreements with the Department's underlying accusations against him related to his allegedly-fraudulent mailers (ECF No. 27 at 9); the Department's delivery of its Order to Show Cause to his Wyoming address (which, as Shaikh concedes, was the address he had registered with the Department) (*id.* at 11); and the process governing the Department's revocation of his insurance and real estate licenses (*id.* at 12-13.)

None of Shaikh's allegations, however, plausibly demonstrates that any of the individual State Defendants violated Shaikh's constitutional rights. While the Department did not hold a hearing before revoking Shaikh's insurance licenses, it found that Shaikh had waived his right to a hearing due to failing to respond to the Order to Show Cause pursuant to N.J.A.C. 11:17D-2.1(d). (ECF No. 43-3 at 14.) Indeed, Shaikh's Amended Complaint alleges that his registered agent received the Department's Order to Show Cause at the address that Shaikh had registered with the Department. (ECF No. 27 at 11.) The REC held a hearing before revoking Shaikh's real estate license, where Shaikh waived his right to counsel. (ECF No. 43-4 at 63.) In both cases, the Department and REC allowed Shaikh to put forth his arguments and issued lengthy written opinions addressing those arguments. And Shaikh had the right to appeal the final orders to the Appellate Division, but chose to file in this Court instead. None of these facts evince a deprivation of due process or the right to petition.

Moreover, Shaikh's conclusory allegation that the Defendants conspired to deprive him of his constitutional rights and discriminated against him on the basis of race is unsupported by any

specific facts.  (ECF No. 27 at 16-17.)  Indeed, Shaikh does not ascribe any specific actions to any of the individual State Defendants.  And the only specific allegations against DAG Schaffer in the Amended Complaint are that he purposefully ignored Shaikh's instructions to contact Shaikh's attorney, and refused to meet with Shaikh in person.  (*Id.* at 6-7.)  Even assuming that DAG Schaffer's actions were improper, Shaikh has not demonstrated that his actions were "plainly incompetent" or violated a "clearly established right" sufficient to strip DAG Schaffer of qualified immunity.  *See Walker v. Coffey*, 905 F.3d 138, 150 (3d Cir. 2018) ("[I]mproper conduct alone does not result in a forfeiture of qualified immunity.").  Shaikh has failed to sufficiently allege violations of equal protection, due process, and the right to petition by the individual State Defendants, who therefore enjoy qualified immunity.  *See Kaul*, 372 F. Supp. 3d at 247 (noting that the "first qualified immunity prong" is "no different" than the "usual Rule 12(b)(6) standard").[15]  Despite failing to state a claim, because this is a first dismissal, Shaikh will have thirty days to move for leave to file a proposed second amended complaint.  *See id.* at 255.

## H.     Section 1981

In order to state a claim under § 1981, a plaintiff must plausibly allege: (1) that he "is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute," which include the right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings."  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796-

---

[15]     Because the Court has found that Shaikh has not sufficiently pled a due process claim under both §§ 1981 and 1983, Shaikh's request for injunctive relief, to the extent it survived the sovereign immunity analysis, must also be dismissed without prejudice. (ECF No. 27 at 55-56 (requesting injunctive relief based on alleged violations of due process).)  *Kaul*, 372 F. Supp. 3d at 243 (dismissing the plaintiff's request for injunctive relief to restore his medical licenses without prejudice because the plaintiff failed to state an underlying claim).

97 (3d Cir. 2001) (citing § 1981).  A plaintiff need not allege state action on the part of the defendant to assert a § 1981 claim.  *Id.* at 797.

Here, Shaikh generally accuses Defendants of treating him differently than other individuals of different races holding the same licenses as Shaikh.  (*See* ECF No. 27 at 17.)  But Shaikh provides no factual basis to support his claim that the Attorney Defendants treated him differently than other non-Muslim individuals.  The only fact cited by Shaikh in support of his claim of racial discrimination is that "many" citizens, "including defendants," have engaged in racial discrimination against Muslim individuals "since the unfortunate events of 9/11."  (*Id.*)  But Shaikh's comment on the general issue of racism in this country does not explain how the Attorney Defendants discriminated against him, and is therefore insufficient to raise his discrimination claim against the Attorney Defendants above the speculative level.  Shaikh's § 1981 claims are dismissed without prejudice.  *See Gross v. R.T. Reynolds, Inc.*, 487 F. App'x 711, 719 (3d Cir. 2012) (finding that a plaintiff's "naked assertion" that the defendant treated other similarly-situated non-minority customers differently than plaintiff did not satisfy Rule 8's pleading standard); *Bridgeforth v. Am. Educ. Services*, 412 F. App'x 433, 435 (3d Cir. 2011) (affirming a district court's dismissal of a plaintiff's § 1981 claim "generally alleg[ing] 'race discrimination'" because "merely reciting an element of a cause of action or making a bare conclusory statement is insufficient").

## I.      Plaintiff's Motion for Sanctions

Finally, the Court denies Shaikh's motion for Rule 11 sanctions against DAG Posta.  (ECF No. 45 at 14-17.)

Rule 11 allows a party to move for the imposition of sanctions against an adversary.  *See* Fed. R. Civ. P. 11(c)(2).  Sanctions awarded under Rule 11 "are warranted only in the exceptional circumstances where a claim or motion is patently unmeritorious or frivolous" and amounts to an

abuse of the legal system. *Watson v. City of Salem*, 934 F. Supp. 643, 662 (D.N.J. 1995); *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988).

Here, the Court agrees with the State Defendants that Shaikh's Motion for Sanctions merely repeats his disagreements with the State Defendants' factual and legal assertions contained in their Motion to Dismiss. (*See* ECF No. 16 (arguing that the State Defendants failed to properly serve Shaikh with their Order to Show Cause).)  Shaikh has not pointed to any "patently unmeritorious or frivolous" filings or arguments made by DAG Posta. Shaikh's disagreement with the Department's decision to revoke his licenses is not a basis to impose sanctions against DAG Posta for filing a nonfrivolous Motion to Dismiss.

## IV.    CONCLUSION

For the reasons set forth herein, Defendants' Motions to Dismiss (ECF Nos. 39 & 43) are **GRANTED IN PART**. Because amendment would be futile, Plaintiff's claims asserted under 18 U.S.C. §§ 241 and 242 are **DISMISSED WITH PREJUDICE**. The remainder of Plaintiff's Amended Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may file a motion for leave to amend the complaint, together with a proposed second amended complaint, within thirty days after the date of this opinion. Plaintiff's Motion for Sanctions (ECF No. 45) is **DENIED**. An appropriate Order follows.

Dated: April 30, 2024

*Georgette Castner*

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**